**B.D.S., INC., Appellant,**

v.

**Charleen E. GILLIS, Appellee.**

**No. 83–453.**

District of Columbia Court of Appeals.

Argued April 16, 1984.

Decided June 29, 1984.

Jack N. Goodman, Washington, D.C., for appellant.

Douglas A. Blaze, L.S. No. 3670, with whom Ann Marie Hay, Washington, D.C., Supervising Atty., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and

---

ROGERS, Associate Judge, and KERN *, Associate Judge, Retired.

PER CURIAM:

B.D.S., Inc. (BDS), the landlord, sued appellee Charlene Gillis, the tenant, in September 1982 for possession of certain premises she leased, alleging that she had not paid her rent. Appellee filed a responsive pleading, asserting that the landlord had failed from the inception of her tenancy to maintain the premises in habitable condition and counterclaimed for some $12,000.[1] The trial court permitted discovery and set the case for trial on March 25, 1983.

On the eve of the trial appellee moved to dismiss the suit for possession on the ground that based on D.C.Code §§ 45–1901, 1902 (1981) BDS "is barred from maintaining a suit for possession because he is not a licensed real estate broker. Nor is he an owner."

The attorney for BDS responded in open court to appellee's motion to dismiss:

[W]e are in fact the owner and we do have standing to bring this suit. BDS entered into a valid sales agreement with the prior owner, and under that agreement the property was placed in trust. The property is in the hands of a trustee. And they are holding the property for the benefit of BDS.

Under the trust agreement, entered into in 1970, the original owners of the apartments agreed to convey title to the property to two trustees who were directed to hold title for the benefit of BDS. The agreement provides:

Purchaser [BDS] shall have the right and obligation to take possession of the property on June 30, 1970 ... and from that date forward shall have the right and duty to manage the property ... to collect the rents and make disbursement payments therefrom for maintenance, debt service obligations, and other costs of operation .... Purchaser shall be entitled to retain for its own purposes any profits derived from the rental of the property....

In addition, BDS agreed to pay all obligations under the mortgage and any real estate and personal property taxes.

The agreement provided BDS with eight years from the conveyance of the property to meet the conditions but the time could be extended for an additional four years by a mutual agreement in writing. Thus, the agreement was not to extend beyond June, 1982.

BDS did not satisfy the conditions for the conveyance during the twelve-year period. However, BDS continued to operate the apartments for its benefit, and based on the record, this was with the knowledge and acquiescence of the trustees and original owners.

At the hearing, BDS presented a written extension of the 1970 Agreement and Declaration of Trust, executed the day of the hearing, which provided as follows:

Lowell J. Bradford of Washington, D.C., as Attorney in Fact under Power of Attorney [for the original owners], and Melvin R. Davis, President and Chairman of Board of Directors of B.D.S., Inc., a Washington, D.C. corporation, have agreed to extend all parts of the above document now recorded until property is refinanced or paid off by the Purchasers [BDS].

Mr. Davis testified, in essence, that it was the parties' intentions to continue the terms of the 1970 agreement indefinitely, or until BDS could fulfill the conditions required for transfer of legal title. This was uncontradicted testimony. The extension was offered as evidence of the parties' intentions.

---

* Judge Kern was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

1. The trial court entered a so-called "protective" order, directing appellee to pay into the court's registry a specific sum each month during the pendency of the litigation.

The trial court dismissed both appellant's complaint and appellee's counterclaim. The court made the following findings:

The Memorandum of Extension offered by plaintiff dated today is insufficient to have extended the trust from last July or to relate back to the inception of these suits.

*The Statute of Frauds as codified in D.C.Code, Section 28-3503, 1981, appears to govern this action. Trusts involving real property must be in writing and signed to be valid.*

The evidence before this Court indicates that the trust terminated in July of 1978, and an oral agreement by the parties to continue the terms of that trust would be an attempt by the parties to create a trust in land orally. The Statute of Frauds does not permit this. Therefore, such an agreement is void.

Thus under the terms of the trust and agreement offered by the plaintiff, B.D.S. is not the owner of the subject property.... (Emphasis added.)

\*　　\*　　\*　　\*　　\*　　\*

[T]his court finds that B.D.S. does not have standing to maintain this action....

Although appellee argues that the trial judge based her conclusion on a review of all the evidence, we believe that a correct reading of the judge's finding is that she discounted an extension of the trust agreement because she found such an extension to be in violation of the Statute of Frauds. In our view, the conscientious trial judge erred in permitting appellee, a stranger to the 1970 agreement or any extension thereof, to assert the Statute of Frauds on her own behalf. "The defense of the statute of frauds is personal to the party to the contract and those in privity with him, and so a third party may not assert its invalidity."

2. The policy behind the D.C.Code's Real Estate and Business Brokers' Licenses Chapter (§ 45, Chapt. 19) is to impose licensing requirements on those operating in the real estate business in exchange for a fee or commission. *See* D.C. Code § 45-1902(d) (1981). Public policy is not violated by BDS maintaining a suit for possession without first obtaining a license because

*Flack v. Laster,* 417 A.2d 393, 399 n. 11 (D.C.1980) (quoting Calamari & Perillo, *The Law of Contracts* 488 (1970)).

The record clearly establishes that BDS and the original owners of the apartments had extended the trust arrangement. This was shown not only by the written extension and testimony by Mr. Davis, president of BDS, but also by the fact that BDS has continued to operate the apartments for its benefit, according to the terms of the agreement.[2]

Eighteen months have now elapsed since BDS first raised the issue of appellee's right to remain on the premises leased and appellee joined issue with her assertion that BDS had continuously violated the terms of such lease.[3] We deem it appropriate to avoid in this case further "needless expense and duplicative litigation," of which appellee vigorously complained to the trial court in seeking to have the court reconsider dismissal of her counterclaim. The issues of appellee's right to continuing possession and appellee's entitlement to recover rent already paid for the asserted failure by BDS to maintain the premises were ripe for determination one year ago and now should be resolved *promptly.*

We remand the case to the trial court with directions (1) to permit BDS to maintain this action; (2) to reinstate the Answer, Recoupment and Counterclaim filed by appellee Gillis; and (3) to place the case on the docket of the Landlord and Tenant Branch of the Civil Division for determination on an expedited basis.

*So ordered.*

the record clearly indicates that BDS has been the beneficial owner of the property since 1970.

3. Counsel advised this court at oral argument that appellee still occupies the premises. Counsel for appellee candidly acknowledges that she "has never asserted that she is not obligated to pay rent to *someone.*"