NATIONAL BANK OF FULTON COUNTY, N.K.A. TOLEDO TRUST COMPANY, APPELLEE, *v.* HAUPRICHT BROTHERS, INC. ET AL., APPELLANTS.

(No. F-87-12—Decided October 14, 1988.)

*James E. Hensal,* for appellee.
*Wilbur C. Jacobs,* for appellants.

*Per Curiam.* The record of this appeal documents a complex and complicated case involving several parties, judgments, and other cases, all of which are related to one another by one crop of seed corn processed in the fall of 1983. The seed corn was grown on premises farmed by defendants-appellants, Haupricht Brothers, Inc., Haupricht Brothers Partnership, and the principals of the corporation and partnership: Gene Haupricht, Arthur Haupricht, and Larry Haupricht. Plaintiff-appellee, Toledo Trust Company, gained actual possession of the corn in 1983 under a court order.

Appellee's possession of the seed corn grew out of the debtor-creditor relationship that exists between appellants and appellee. Appellee owns a

note for $335,176 executed by appellants and secured by a mortgage (the "1982 Note"). Appellee was further secured by a security agreement (the "Security Agreement") executed in 1978 by appellee's predecessor in interest, the National Bank of Fulton County ("Fulton Bank"), and Haupricht Brothers, Inc. The Security Agreement memorialized, *inter alia,* a security interest in future crops. When appellants defaulted on their note with appellee, appellee instituted an action to replevy the seed corn, asserting that it was entitled to the seed corn by its security interest. The court rendered an emergency order granting possession and appellee arranged for the processing and sale of the corn. Upon selling the processed corn, appellee applied the proceeds totaling $60,878.25 toward appellants' debt.

After the corn was sold, appellee was sued by Garno Seed Company ("Garno") in the Federal District Court for the Southern District of Michigan. In this federal diversity action (the "Garno suit"), Garno alleged that appellee's possession of the seed corn was a wrongful taking as against Garno. According to Garno's allegations, it had a contractual right to the corn, and appellee had no security interest in the corn. In September 1985, this case was disposed of by consent judgment, wherein appellee was ordered to pay $30,000 to Garno.

During the spring of 1984, real estate and farm implements owned by appellants were liquidated and the funds were applied to satisfy appellants' debt on the defaulted note. By August 1985, appellants' debt had been reduced to $20,340.75. At that time, a sale of real estate and buildings owned by appellants raised $30,000. However, the proceeds were not applied to cancel appellants' outstanding balance; instead, they were escrowed in apparent contemplation of future litigation between appellee and appellants. Appellee soon thereafter instituted this action against appellants. Appellee essentially sued to recover two separate amounts of money. First, appellee sought the remaining $21,425.12 that appellants owed on the defaulted note. Second, appellee sought reimbursement for both the settlement amount paid to Garno and $19,194.39 in attorney fees paid to defend appellee against Garno.

Appellee moved for summary judgment as to the first amount and the trial court granted this motion. As to the second amount, the jury rendered a verdict in favor of appellee, determining that appellants owed appellee an additional $21,394.80. Accordingly, the trial court's judgment entry found that appellants owed appellee $42,819.92, plus interest at the rate of ten percent per annum from July 15, 1987. The trial court ordered that the escrowed fund, totaling $33,129.89, could be used as a setoff upon appellee's application for the money. Appellants thereafter timely filed their notice of appeal.

Several of appellants' nine assignments of error are closely related. Thus, they are combined for disposition. Specifically, appellants' fifth, sixth, seventh, and eighth assignments of error are considered together. Appellants' third and ninth assignments of error are also discussed together. Our grouping leaves appellants' first, second, and fourth assignments remaining and this decision begins by discussing them individually in that order. Following this, we consider appellants' fifth, sixth, seventh, and eighth assignments of error. Lastly, we address appellants' third and ninth assignments of error.

"Assignment of Error No. 1: The Court erred in refusing to strike the amended complaint herein for failure to follow court rules."

The trial court denied appellants' motion to strike an amended complaint filed by appellee. Under their first assignment of error, appellants contend that appellee's amended complaint "broke about every rule of proper procedure." Nevertheless, appellants fail to specify which rules were broken and upon review we are unable to make a reasonable guess as to their identity. The operative facts relevant to appellants' challenge are the same in the case *sub judice* as in countless other lawsuits. Upon appellee's request, the trial court granted leave to file an amended complaint. Accordingly, appellee filed its amended complaint. The facileness of this process is easily understandable since Civ. R. 15(A) directs trial courts to freely grant leave to amend complaints "when justice so requires." Because leave to amend is a matter for the discretion of the trial court, *Dept. of Taxation* v. *Cemetery Mgt. Service Co.* (1981), 2 Ohio App. 3d 115, 117, 2 OBR 128, 130, 440 N.E. 2d 1222, 1224, we will not disturb the trial court's decision absent an affirmative showing of abuse of discretion. See *Solowitch* v. *Bennett* (1982), 8 Ohio App. 3d 115, 116, 8 OBR 169, 170, 456 N.E. 2d 562, 564. Appellants do not make such an affirmative showing. Therefore, we conclude that appellants' first assignment of error is not well-taken.

"Assignment of Error No. 2: The Court erred in granting summary judgment to plaintiff on defendant's cross petition."

Appellee moved for summary judgment against appellants' counterclaim. The trial court granted appellee's motion and dismissed appellants' counterclaim, finding that there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law. Upon review, we affirm the summary judgment because appellants fail to articulate any reasons showing why it was error for the trial court to grant appellee's motion for summary judgment.

As a threshold matter under Civ. R. 56(C), summary judgment will not be granted until the movant sufficiently demonstrates the absence of any genuine issue of material fact. Once the initial burden of Civ. R. 56(C) is met, Civ. R. 56(E) acts to pierce the pleadings and force the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Appellants advance no reason showing why this court should find that the trial court erred in determining that appellee satisfied the threshold showing required under Civ. R. 56(C), demonstrating that appellants' counterclaim raised no genuine issue of material fact. Furthermore, appellants make no showing that they presented to the trial court evidence sufficient under Civ. R. 56(E) to withstand a summary judgment. Based on appellants' failure to direct our attention to any evidence showing that the trial court erred in either determining that appellee satisfied the requirement of Civ. R. 56(C), or determining that appellants failed to make the showing required of nonmovants under Civ. R. 56(E), we find appellants' second assignment of error not well-taken.

"Assignment of Error No. 4: The Court erred in excluding evidence offered by defendant and objections to plaintiff's evidence."

Under their fourth assignment of error, appellants have the duty to direct the attention of this court to the specific evidence which appellants claim prejudiced them either in its admission or denial. *Schumacher* v. *Smith* (App. 1951), 58 Ohio Law Abs. 321, 96 N.E. 2d 433. Accordingly, appellants direct this court's attention to three pages of the transcript of proceedings. Our review finds that these

three pages record two objections made by appellee during appellants' cross-examination of appellee's witness. Both objections were sustained. Apparently, appellants believe these rulings included improper and prejudicial comments.

The scope of cross-examination and the admissibility of evidence during cross-examination are matters controlled by the sound discretion of the trial judge. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 163, 17 O.O. 3d 98, 100, 407 N.E. 2d 490, 493. When the trial court determines that certain evidence will be excluded from trial, the ruling of the court will not be reversed unless there has been a "clear and prejudicial abuse of discretion." *Id.* Appellants' brief does not explain how the trial judge's comments were "improper and highly prejudicial." The trial judge merely directed appellants' counsel to restrict his questions to matters relevant to the instant case. We do not find that this instruction constituted a clear and prejudicial abuse of discretion. Therefore, we find appellants' fourth assignment of error not well-taken.

"Assignment of Error No. 5: The Court erred in giving plaintiff's request to charge to the jury.

"Assignment of Error No. 6: The Court erred in refusing to give requests to charge by defendant to the jury.

"Assignment of Error No. 7: The Court erred in the general charge to the jury.

"Assignment of Error No. 8: The judgment is not supported by the evidence and is contrary to law."

We combine for determination appellants' fifth, sixth, seventh, and eighth assignments of error because the same contention underlies each of them. Under these assignments of error, appellants essentially argue as a matter of law that appellee could pros-

ecute only a cause of action for indemnity, indicating further that an action in any other form should have been dismissed. We disagree. Under the Ohio Rules of Civil Procedure, there is only one form of action: a civil action. Civ. R. 2. Pursuant to modern rules of pleading and proof, the particular form that appellants believed was appropriate for prosecution of appellee's cause of action is immaterial. See 1 Ohio Jurisprudence 3d (1977) 338, Actions, Section 5. Accordingly, we find appellants' fifth, sixth, seventh, and eighth assignments of error not well-taken.

"Assignment of Error No. 3: The Court erred in failing to direct a verdict for defendant at the close of plaintiff's evidence and at the end of the case."

"Assignment of Error No. 9: The judgment of the trial court is against the weight of the evidence."

Appellants contend under their third and ninth assignments of error that the evidence adduced by appellee was insufficient to either present a question for the jury or support a verdict in favor of appellee. Error predicated on a denied motion for directed verdict is similar to the assertion that the trial court's judgment is against the manifest weight of the evidence. Both contentions require the reviewing court to ascertain whether competent evidence supports the case of the prevailing party. See, *e.g.*, *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 36, 1 O.O. 2d 181, 185, 139 N.E. 2d 10, 14, and *Feliciano* v. *Kreiger* (1977), 50 Ohio St. 2d 69, 72, 4 O.O. 3d 158, 160, 362 N.E. 2d 646, 649. Error based on the manifest weight of the evidence further requires an appellate court to address credibility. *E.g.*, *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus. However, when reviewing a

denied motion for directed verdict, an appellate court may not consider weight and credibility. *Durham, supra.* Despite this distinction, we consider appellants' third and ninth assignments of error together because our review focuses on the competence of the evidence underlying appellee's case and excludes any consideration of credibility.

Appellee argued below that appellants were liable for appellee's settlement with Garno because appellants had both created and benefited from a situation where appellee injured Garno. Specifically, appellee contended that it had taken the seed corn to the legal detriment of Garno. Furthermore, appellee attributed fault for this wrongful taking to appellants. According to appellee's theory of the case, appellee repossessed seed corn that it believed it had the right to possess under the Security Agreement executed by Haupricht Brothers, Inc., and Fulton Bank. Appellee used the proceeds from the sale of the seed corn to reduce the debt owed by appellants, thus benefiting appellants. However, as between Garno and appellee, appellee claimed Garno's possessory right to the corn was superior because of actions taken by appellants.

Appellee alleged that one appellant, Gene Haupricht, contracted to grow the seed corn for Garno. Although appellee contended it ordinarily would have a security interest in such a crop because the corn was grown on property identified by the Security Agreement, appellee argued that such security interest did not exist because Gene Haupricht contracted as an individual. According to appellee, it held a security interest only in crops grown by the debtor designated by the Security Agreement, namely, Haupricht Brothers, Inc. Since Gene Haupricht had not contracted on behalf of the corporate debtor, appellee contended it

had no security interest in the seed corn. Absent a security interest, appellee asserted it was an unsecured party relative to the seed corn.

At trial, appellee alleged and offered supporting proof that Garno had a contractual right to the seed corn. Pursuant to this contractual right and relative to appellee's alleged unsecured status, appellee contended that it was subordinate to Garno because R.C. 1302.43(A) provides that the possessory right of a buyer of goods is superior against an unsecured creditor. Moreover, appellee contended it "had no reasonable defenses" in the Garno suit. Essentially underpinning this assertion were the fact that Gene Haupricht was not designated by the Security Agreement as a debtor and the allegation that Gene Haupricht contracted with Garno as an individual. To be sure, David French, counsel for appellee in the Garno suit, opined that Gene Haupricht's contracting in his individual capacity with Garno "* * * invalidated our entire defense to that lawsuit" (*i.e.,* the Garno suit). French concluded his testimony with the comment that "* * * the major problem was that [Gene Haupricht] did not sign the contract [with Garno] in a corporate capacity * * * and that if he had done that, [appellee] would have had a valid defense in [the Garno suit]." Appellee's payment to Garno of $30,000 was based on its assertion that it had no reasonable defense in the Garno suit. Consequently, appellee argued at trial that it should be allowed to recover the settlement amount from appellants under theories of misrepresentation, unjust enrichment, and breach of warranty. The jury rendered a verdict in favor of appellee.

A jury verdict may not be reversed if it is supported by some competent, credible evidence going to all the essential elements of the case. *Terveer*

v. *Baschnagel* (1982), 3 Ohio App. 3d 312, 313, 3 OBR 365, 366, 445 N.E. 2d 264, 266. The fundamental element underlying appellee's case was that it had no security interest in the seed corn. Assuming appellee did not have a security interest, then Garno's possessory right was superior under R.C. 1302.43(A). However, if appellee was secured in the seed corn, then R.C. 1302.43(C) provides that appellee's possessory right would be superior to Garno's. If appellee's possessory right was superior, then there would be little reason for appellee to settle with Garno, and no reason for imposing on appellants the cost of appellee's settlement with Garno. Thus, addressing appellants' third and ninth assignments of error requires this court to determine whether competent evidence supported appellee's claim that it had no security interest in the seed corn.

Our review begins by determining the nature of the debtor-creditor relationship between appellee and appellants. R.C. 1309.14(A) provides the threshold requirements for "attachment," *i.e.,* the initial steps necessary for a security interest to be enforceable against the debtor or third parties. A "security interest" is an interest in personal property or fixtures which secures payment or performance of an obligation. R.C. 1301.01(KK). To create such a security interest in the instant case, the debtor must have signed a security agreement which contained a description of the collateral and the land concerned. R.C. 1309.14(A). Moreover, value must have been given and the debtor must have had rights in the collateral. *Id.* Provided these requirements were satisfied, then a security interest attached in the case *sub judice.* R.C. 1309.14(B).

Our review finds that the Security Agreement was signed on April 3, 1978, by Gene Haupricht, Larry Haupricht, and Arthur Haupricht for Haupricht Brothers, Inc. "Collateral" means the property subject to the security interest. R.C. 1309.01(A)(3). The collateral described in the Security Agreement included "[a]ll crops now growing and to be grown."[1] The Security Agreement describes the land concerned as "premises owned by Haupricht Bros., Arlie McCarthy, and Frank Repka [respectively, 'Brothers, McCarthy, and Repka'] and located at Royalton, Pike, and Fulton Townships, Fulton County, Ohio." The Security Agreement indicates that the value given amounted to $225,000. Since there is no evidence to the contrary, we assume that Haupricht Brothers,

---

[1] This language of the Security Agreement constitutes an after-acquired property clause. Since the Security Agreement was executed in 1978, the version of R.C. 1309.15 then effective would control the after-acquired property clause. Former 1309.15(D)(1) pertinently provided that:

"No security interest attaches under an after-acquired property clause:

"(1) to crops which become such more than one year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage, or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transaction * * *." See 129 Ohio Laws, 143, 150.

Under this statutory provision, Fulton Bank was required to execute a new security agreement one year from the time the 1978 Security Agreement was executed, *i.e.,* April 3, 1979. *United States* v. *Minster Farm Cooperative Exchange, Inc.* (N.D. Ohio 1977), 430 F. Supp. 566, 570. The record is silent as to whether a new security agreement was created in 1979. Absent any contrary evidence, we assume a new Security Agreement was executed in 1979.

Inc. had rights to the collateral described in the Security Agreement. In sum, we find pursuant to R.C. 1309.14(B) that a security interest attached in favor of Fulton Bank in collateral pertinently consisting of crops growing on premises owned by Brothers, McCarthy, and Repka and located at Royalton, Pike, and Fulton Townships, Fulton County, Ohio.

Attachment is only one of two steps necessary to perfect a security interest. *Sight & Sound, Inc.* v. *Wright* (S.D. Ohio 1983), 36 Bankr. Rptr. 885. Pursuant to this first step, the Security Agreement in the instant case created a security interest and supplied a memorial of the parties' agreement for future reference. See Annotation (1980), 99 A.L.R. 3d 1194, 1201. The primary function of a security agreement is that of a Statute of Frauds; it is designed mainly to minimize disputes between the debtor and the secured party over whether there was an agreement and over what collateral it could have covered. See 2 White & Summers, Uniform Commercial Code (3 Ed. 1988) 305, Section 24-4.

The second step necessary to perfect a security interest is perfection. *Wright, supra.* A security interest is perfected when "all the applicable steps required for perfection have been taken, as provided in [R.C.] 1309.21, 1309.23, 1309.24, and 1309.25." R.C. 1309.22. For the case *sub judice,* R.C. 1309.23, 1309.24, and 1309.25 are irrelevant. R.C. 1309.21 provides that a filed financing statement would perfect Fulton Bank's security interest in crops growing on premises owned by Brothers, McCarthy, and Repka.

The function of a financing statement is to give notice to interested third parties that the person filing it may have a security interest in property of the debtor named therein. Annotation, 99 A.L.R. 3d, *supra,* at 1201. The object of the notice requirement of

Article 9 of the Uniform Commercial Code (R.C. 1309.01 *et seq.*) is to provide protection for creditors who may need to know whether certain property is encumbered. *United Bhd. of Carpenters & Joiners* v. *Paul Lugger Displays, Inc.* (1981), 2 Ohio App. 3d 190, 193, 2 OBR 207, 210, 441 N.E. 2d 581, 583. Thus, perfection by filing a financing statement is predicated on notice. So long as the financing statement apprises a record searcher that certain collateral may be encumbered by a security interest, then such security interest continues perfected. See Official Comment to R.C. 1309.39.

When a financing statement is filed to perfect a security interest in collateral that consists of crops growing or to be grown, then the financing statement "must show that it covers this type of collateral, must recite that it is to be filed for record in the real estate records, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage of the real estate to give constructive notice of the mortgage under the law of this state. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner or record lessee." R.C. 1309.39(E).

Our review finds that Fulton Bank filed a financing statement (the "Financing Statement") on July 26, 1978. The Financing Statement provides that Fulton Bank has a security interest in "all crops now growing and to be grown." Pursuant to R.C. 1309. 39(E), the Financing Statement describes the real estate on which the crops are grown as "farm [in section 22 and 23, Royalton Twp., Fulton County] containing 280 acres owned by Haupricht Bros." and "on other property as follows: 100.6 acres in Sect. 8, Royalton Twp., Fulton Co. Ohio owned by Arlie McCarthy. 60 Acres in Sect.

25, Royalton Twp., Fulton Co., Ohio owned by Gene Haupricht. Sect. 34, Pike Twp., Fulton County, Ohio containing 135 Acres owned by Haupricht Bros. 160 Acres, Sect. 1, Fulton Twp., Fulton County, Ohio owned by Frank Repka."

According to this description and pursuant to R.C. 1309.39(E), the debtor designated by the financing statement, Haupricht Bros. Inc., plainly did not have an interest of record in three parcels on which the collateral was growing or grown, namely: 100.6 acres owned by Arlie McCarthy, sixty acres owned by Gene Haupricht, and one hundred sixty acres owned by Frank Repka.

R.C. 1309.40(D) provides in pertinent part that "* * * statements covering crops growing or to be grown * * * shall also be indexed in the real estate mortgage records by the filing officer according to the name of the debtor or, if the financing statement shows the record owner or record lessee to be other than the debtor, then according to the name of the record owner or record lessee given in the statement."

Consequently, the Financing Statement was required to be filed also under the names of Arlie McCarthy, Gene Haupricht, and Frank Repka. We note that anyone searching the real estate mortgage records under these names would have learned that certain property owned by these individuals supported crops in which Fulton Bank held a security interest.

Based on the foregoing discussion, we conclude that Fulton Bank had a perfected security interest in collateral consisting in part of all crops growing or to be grown on certain property owned by Brothers, McCarthy, Repka, and Gene Haupricht. Since appellee succeeded Fulton Bank, we find appellee acquired the status of a secured party, having a security interest identical to that previously held by Fulton Bank.

Generally, a filed financing statement effectively perfects a security interest for a period of five years. R.C. 1309.40(B)(1). Thereafter, the financing statement "lapses" and the security interest becomes "unperfected" if appropriate steps are not taken. R.C. 1309.40(B)(1). To continue perfection beyond the five-year period, the secured party is required to file a continuation statement pursuant to R.C. 1309.40(C). Since Fulton Bank filed the Financing Statement on July 26, 1978, appellee's security interest would have lapsed in July 1983 unless a continuation statement was filed. Appellee asserts in its brief that "a proper continuation statement was filed with the Fulton County Recorder on May 16, 1983." We do not agree.

Continuation statements are distinguishable from financing statements and the latter is not sufficient to serve as the former. *Eastern Indiana Prod. Credit Assn.* v. *Farmers State Bank* (1972), 31 Ohio App. 2d 252, 60 O.O. 2d 410, 287 N.E. 2d 824, paragraph two of the syllabus. To be valid, a continuation statement "must be signed by the secured party, identify the original statement by file number, and state that the original statement is still effective." R.C. 1309.40(C). Our review of the record finds no document which satisfies these requirements. The document referenced by appellee as a "proper continuation statement" virtually mirrors the Financing Statement. Regardless, it is not a valid continuation statement because it neither identifies the original statement by file number, nor states that the original statement is still effective. See *Eastern Indiana, supra,* at 254, 60 O.O. 2d at 412, 287 N.E. 2d at 827. Consequently, we find, pursuant to R.C. 1309.40(B)(1), that appellee's security interest in collateral con-

sisting of crops growing or to be grown on certain premises owned by Brothers, McCarthy, Repka, and Gene Haupricht became unperfected on July 26, 1983. The legal consequence of this lapse was that appellee's interest as a secured party became "subject to defeat by those persons who take priority over an unperfected security interest (see R.C. 1309.20)." *Eastern Indiana, supra,* at 255, 60 O.O. 2d at 412, 287 N.E. 2d at 827.

Generally, a secured party has on default the right to take possession of the collateral. R.C. 1309.46. In April 1983, appellants defaulted on the 1982 note that was secured in part under the future advance provision of the Security Agreement between Haupricht Brothers, Inc. and Fulton Bank. Because of appellee's security interest and appellants' default, appellee acquired the seed corn under a court order rendered in September 1983. This order granted appellee the right to the immediate possession of " '[a]ll crops now growing and to be grown and products thereof grown or growing on premises owned by Haupricht Brothers, Arlie McCarthy and Frank Repka and located at Royalton, Pike and Fulton Townships, Fulton County, Ohio.' More specifically with regard to this action, all *seed corn* growing or products thereof grown or growing situated in the Township of Royalton, County of Fulton, State of Ohio, and being the North one-half (½) of the Southwest quarter (¼) of Section twenty-three (23) in Town nine (9) South, Range three (3) East, containing eighty (80) acres of land, more or less and/or situated in the Township of

Royalton, County of Fulton, State of Ohio, and being the East half (½) of the Northeast quarter (¼) of Section twenty-two (22) and the South one-half (½) of the Northwest quarter (¼) of Section twenty-three (23), all in Town nine (9) South, Range three (3) East, containing one hundred sixty (160) acres of land more or less." (Emphasis added.)

Doubtlessly, the seed corn granted to appellee was a crop. Therefore, the seed corn was collateral subject to appellee's security interest because appellee's security interest extended to crops and the premises described by the court order as supporting the seed corn are included within the premises described by the Security Agreement and Financing Statement as supporting collateral crops. Since the seed corn was collateral, R.C. 1309.46 gave appellee the right to possess the seed corn when appellants defaulted on the note.

Our conclusion that appellee had the right to possess the seed corn contradicts the essence of appellee's case at trial. As a fundamental premise, appellee contended that it had no security interest in the seed corn because the corn was contracted to be sold by an individual who was not the corporate debtor designated by the Security Agreement. Appellee offered evidence showing that the individual, Gene Haupricht, had contracted to grow the corn for Garno, and further contended that it would have had a security interest in the seed corn if Gene Haupricht had contracted on behalf of the corporate debtor, and not in his individual capacity.[2] In sum, appellee

---

[2] Testimony was given at trial that Gene Haupricht's 1983 agreement to grow the seed corn for Garno breached a promise to appellee that Gene would contract only in a corporate capacity on behalf of Haupricht Brothers, Incorporated. However, we note

that appellee also produced evidence showing that the articles of incorporation for Haupricht Brothers, Incorporated were cancelled on November 23, 1981. When a corporation's articles are cancelled, R.C. 1701.88(A) pertinently provides that "the

argued that Gene Haupricht's contract with Garno rendered appellee unsecured, even though the corn was described as collateral in the Security Agreement and Financing Statement. However, Gene's contract with Garno is irrelevant to determining whether appellee had a security interest in the seed corn. Ascertaining whether appellee had a security interest in the corn was simply and solely a matter of determining whether a security interest existed and whether the corn constituted collateral to which such security interest attached. We have previously determined that the Securi-

corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs * * *.'' Accordingly, Haupricht Brothers, Inc. was precluded from doing any new business as of November 23, 1981. Therefore, we are puzzled by appellee's contention that Gene Haupricht should have conducted business on behalf of the corporation in 1983.

Under R.C. 5733.21, no person may conduct new business on behalf of a corporation whose articles have been cancelled. Therefore, no individual could conduct new business on behalf of Haupricht Brothers, Incorporated after November 23, 1981. Those who violate R.C. 5733.21 are subject to penalties provided under R.C. 5733.99. Consequently, if Gene Haupricht had contracted on behalf of Haupricht Brothers, Inc. in 1983, as appellee claims he should have, he would have violated R.C. 5733.21 and subjected himself to penalties under R.C. 5733.99.

Notwithstanding the effect of R.C. 1701.88, the legal existence of Haupricht Brothers, Inc. certainly continued after 1981 for the purpose of enforcing the Security Agreement against the corporation. See *Columbia Real Estate Title Ins. Co.* v. *Columbia Title Agency, Inc.* (1983), 11 Ohio App. 3d 284, 11 OBR 513, 465 N.E. 2d 468. However, corporate cancellation raises the question whether appellee became unsecured relative to third parties. R.C. 1309.39(G) provides in pertinent part that when ''* * * the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a

ty Agreement memorialized the attachment of appellee's security interest. According to the Security Agreement, appellee has a security interest in ''all crops growning or to be grown'' on premises owned by ''Haupricht Bros., Arlie McCarthy, and Frank Repka and located at Royalton, Pike, and Fulton Twps., Fulton County, Ohio.'' The seed corn at issue was a corp that grew on premises described in the Security Agreement. Therefore, appellee's security interest extended to the seed corn.

Appellee's mistake in arguing

filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. * * *''

The identity and corporate structure for Haupricht Brothers, Inc. changed in 1981 when its articles of incorporation were cancelled. From that point, the corporation was precluded from doing business. Any future business by the individual stockholders would have to be in a capacity other than as Haupricht Brothers, Inc. Thus, R.C. 1309.39(G) applies to the facts.

Under R.C. 1309.39(G), the question is whether the identity of the successor entity is so different from the debtor identified by the financing statement that the financing statement would seriously mislead a record searcher. Anderson, Uniform Commercial Code (3d Ed. 1981), Section 9-402-46. If the change is misleading, then the filed financing statement becomes ineffective to perfect a security interest in collateral acquired more than four months after the change. However, if the change would not mislead a record searcher, then the filing remains effective. Since the surname for all the principals for the corporation, Haupricht, is identical to the principal term in the corporation's name, we find that a record searcher would have no difficulty in discovering appellee's security interest. Accordingly, appellee's security interest continued in future crops notwithstanding the corporation's cancellation.

otherwise was rooted in its focusing on what parties were designated by the Security Agreement. If this case had been one where a party was disputing that it held the status of "debtor" bound to a particular security agreement, then appellee's analytical perspective would have been relevant. However, this case was not such a dispute because no appellant was arguing that it was a debtor. Instead, appellee's paradoxical position was that it was unsecured in a crop which it had repossessed. Therefore the relevant issue was whether the repossessed crop was "collateral," *i.e.,* subject to appellee's security interest.

Appellee argued throughout this case that the seed corn was not collateral because it was grown by someone other than the debtor designated by the Security Agreement, *i.e.,* Haupricht Brothers, Inc. This reasoning is flawed for several reasons. First, determination of whether a party is a secured party having a perfected security interest in particular collateral requires more than a review of the security agreement. For example, a review of the financing statement is equally important when perfection is achieved in this manner because this document serves to give notice of the security interest to third parties. Indeed, inquiry as to the character and quality of the financing statement's notice becomes particularly important when a challenge is made to the sufficiency with which a debtor was designated in a security agreement. See Annotation (1980), 99 A.L.R. 3d 478, 491. Clearly, a claim of insufficient designation of the debtor underlay appellee's cause of action. Relative to such a claim, the party arguing that the security agreement sufficiently designated a party as a debtor prevails "if he can show that the information contained in the financing statement was sufficient to give notice of the security interest in spite of any error in designating the debtor." *Id.* The party whom appellee claimed was insufficiently identified as a debtor was Gene Haupricht. Turning to the Financing Statement, we find it abundantly apparent that Gene's last name is identical to the first term of the designated debtor: "Haupricht Brothers, Inc." Moreover, the description of real estate described in the Financing Statement plainly identifies Gene Haupricht as one of four record titleholders of real estate that supported crops subject to appellee's security interest. Therefore, the Financing Statement sufficiently gave notice of appellee's security interest in the seed corn, notwithstanding the Security Agreement's failure to designate Gene Haupricht as a debtor.

Secondly, when a third party challenges specificity in the security agreement, that party should succeed against the secured party only when it can prove that it *in fact* relied on misleading documents in concluding that no competing claim exists. In the case *sub judice,* Garno was identified as the third party who would prevail against appellee because of insufficient specificity in the Security Agreement. However, our review finds no evidence showing that Garno relied on the Security Agreement. For that matter, the record is without evidence showing that Garno searched any official records before it entered into agreement with Gene Haupricht for the seed corn. In the instant case, such a search of the official records would have been highly revealing. As we have previously indicated, a search of the mortgage records under Gene Haupricht's name would have disclosed that crops growing on a parcel owned by Haupricht were subject to appellee's security interest. This same information would have again been revealed by a search of financing statements whose debtors' identities included the name "Haupricht."

Thirdly, appellee's conclusion that it had no security interest in the seed corn was based on its conclusion that Gene Haupricht was not a debtor bound by appellee's security interest. Since the Security Agreement designated only Haupricht Brothers, Inc. as the debtor, appellee concluded that only crops grown by Haupricht Brothers, Inc. were collateral subject to appellee's security interest. Appellee's conclusion is erroneous because it follows from a simplistic conception of what constitutes a "debtor" for purposes of R.C. 1309.01 *et seq.* According to R.C. 1309.01(A)(4), " '[d]ebtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral. * * *." The 1982 note is the pertinent obligation secured in the case *sub judice.* A review of the note identifies Gene Haupricht as one of several parties who owes payment on the note. Therefore, under R.C. 1309.01(A)(4), Gene Haupricht is a "debtor" for purposes of R.C. 1309.01 *et seq.*

R.C. 1309.01(A)(4) further provides that when "* * * the debtor and the owner of the collateral are not the same person, the term 'debtor' means * * * the obligor in any provision dealing with the obligation, and may include both where the context so requires." If there were any doubt as to whether Gene Haupricht is a debtor, we believe this last sentence of R.C. 1309.01(A)(4) settles the matter conclusively. Gene Haupricht is an obligor under the obligation secured by appellee's security interest. Therefore, Gene Haupricht is a "debtor."

R.C. 1309.01(A)(4) also provides that when "the debtor and the owner of collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of sections 1309.01 to 1309.50 of the Revised Code * * *." Although R.C. 1309.01 *et seq.* do not provide the indicia that will sufficiently support a finding of ownership, we believe the record contains evidence sufficient to find that several parties besides Haupricht Brothers, Inc. constituted debtors because they owned crops described as collateral in the Financing Statement. For example, appellee's own witness testified that the seed corn was owned by Gene Haupricht. Since the seed corn is included within the collateral described in the Security Agreement and Financing Statement, Gene Haupricht again meets the definition of "debtor." The Security Agreement and Financing Statement also gave notice that some collateral crops were being grown on parcels of real estate which Haupricht Brothers, Inc. did not own. Since the record owners, McCarthy and Repka, presumably had possession of the collateral crops growing on their premises, they quite plausibly were the owners of the crops. Therefore, they could also be deemed "debtors" under R.C. 1309.01(A)(4).

Notwithstanding appellee's possessory right to the seed corn under R.C. 1309.14 and 1309.46, the fact remains that appellee's security interest was subject to defeat because it had become unperfected. R.C. 1309.20(A) pertinently provides that:

"* * * [A]n unperfected security interest is subordinate to the rights of:

"(1) persons entitled to priority under section 1309.31 of the Revised Code;

"(2) a person who becomes a lien creditor before the security interest is perfected;

"(3) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business, or is a buyer of farm products in ordinary course of business, to the extent that he gives value and

receives delivery of the collateral without knowledge of the security interest and before it is perfected;

"(4) in the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that he gives value without knowledge of the security interest and before it is perfected."

Although appellee claimed it was subordinate to Garno, our review finds that the record does not support such a conclusion because Garno does not belong to one of the four classes of interest holders that are superior to appellee under R.C. 1309.20(A). R.C. 1309.31 is inapplicable because Garno held no security interest in the seed corn. Therefore, Garno does not belong to the class described in R.C. 1309.20(A)(1). The record contains no evidence showing that Garno is a lien creditor pursuant to R.C. 1309.20(C). Consequently, Garno does not belong to the class described in R.C. 1309.20(A)(2). Garno does not belong to the class described in R.C. 1309.20(A)(3) because it never received delivery of the collateral. Since this case does not involve accounts and general intangibles, Garno was not a member of the class described in R.C. 1309.20(A)(4). Thus, we find that appellee's possessory right to the seed corn was undefeatable by any claim made by Garno.

To reiterate, it was an essential element of appellee's case that it had no security interest in the seed corn. Based on the foregoing discussion, we conclude from the evidentiary record that appellee clearly failed to establish this element. Therefore, the jury verdict may be reversed in the case *sub judice. Baschnagel, supra,* at 313, 3 OBR at 366, 445 N.E. 2d at 266. Accordingly, we find appellants' third and ninth assignments of error well-taken.

Finding as we have, we affirm in part and reverse in part. Since appellants' notice of appeal challenges "all prior orders in said cause," we expressly affirm all orders made below that were not addressed by appellants' assignments of error and, thus, were not discussed by our decision. Furthermore, we affirm the trial court's granting of appellee's motion for summary judgment against appellants' counterclaim. We also affirm the trial court's granting of appellee's motion for summary judgment as to the $21,452.12 due appellee from appellants. We reverse the judgment of the trial court as to the $21,394.80 that was ordered owing to appellee from appellants.

The amount of the escrowed fund exceeded that to which we find appellee was entitled. However, it is unclear from the record whether appellee applied for the release of this fund. Due to this lack of information, and suspecting that further calculations will be necessitated by our decision, we remand this cause to the trial court for further proceedings consistent with our decision. Appellee is ordered to pay one half of the costs of this appeal and appellants are ordered to pay the remaining one half.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

CONNORS, HANDWORK and GLASSER, JJ., concur.