In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4110

In re:  Vic Supply Company, Inc.,

Debtor.


Falconbridge U.S., Inc.,

Plaintiff-Appellant,

v.

Bank One Illinois, N.A.,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2714--Elaine E. Bucklo, Judge.


Argued May 18, 2000--Decided September 19, 2000




 Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

 Posner, Circuit Judge.  This case involves a
dispute between two creditors of the bankrupt Vic
Supply Company. Bank One had a security agreement
with Vic, covering all of Vic's assets.
Falconbridge sold Vic nickel for resale,
acquiring a purchase money security interest
covering the proceeds of the resale. The
bankruptcy court, seconded by the district court,
to which Falconbridge had appealed, ruled that
Bank One's security interest was prior to
Falconbridge's under Article 9 of the Uniform
Commercial Code (codified in Illinois as 810 ILCS
5/9). Falconbridge argues that its interest is
prior because the security agreement between the
bank and Vic was never accepted by the bank. The
argument turns on whether a secured lender's
failure to sign such an agreement, when the
agreement provides that it is effective only when
signed by the lender, allows a subsequent secured
lender to take priority over the earlier one.

 The bank began lending money to Vic in 1980, and
that year it filed a UCC financing statement with

the Secretary of State of Illinois covering all of Vic's inventory, accounts receivable, and equipment. The statement implied that the parties had or intended soon to make an agreement granting the bank a security interest in these assets, the purpose of filing such a statement being to perfect such an interest. The UCC does not require, for a security interest to be perfected, that the security agreement precede the filing of the financing statement, sec. 9-402, let alone that it be attached to the statement (the statement "indicates merely that the secured party who has filed may have a security interest in the collateral described," sec. 9-402, official comment 2; see In re Varney Wood Products, Inc., 458 F.2d 435 (4th Cir. 1972)), although that is often done; and we do not know the agreement's terms.

Ten years later, with the bank continuing to extend credit to Vic, Vic signed another agreement, granting the bank a continuing security interest in all Vic's assets. The agreement expressly covered--what was anyway implicit, sec. 9-306(2)--the proceeds of sales from inventory. A few months earlier the bank had filed with the Illinois Secretary of State a continuation financing statement materially identical to the one filed back in 1980.

Years passed, and Falconbridge, having obtained a purchase money security interest in the nickel that it was selling to Vic, filed a financing statement, just as Bank One had done. This security interest, like Bank One's, automatically extended to the proceeds of Vic's resale of the nickel. When Vic later defaulted, Bank One's security interest, having been recorded before Falconbridge's, would normally have had priority, sec. 9-312(5)(a); Falconbridge was not entitled to the superpriority that is accorded to a purchase money security interest when the debtor receives cash proceeds in a sale of the collateral, sec. 9-312(3), because the proceeds that Vic received were in the form of accounts receivable rather than cash.

But Bank One had failed to sign the 1990 security agreement, and Falconbridge argues that this failure means that the agreement did not become effective. The agreement provides that "the terms and provisions of this agreement shall not become effective and Bank shall have no duties hereunder unless and until this agreement is accepted by Bank as provided below"--and below is a blank for a signature that was never filled in. Falconbridge reminds us that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." UCC sec. 9-

"According to its terms," Falconbridge argues, the agreement never came into effect. Although the agreement authorizes the bank to fill in any blanks in it, the bank had not done that; and according to Falconbridge, it was too late for the bank to do so once Falconbridge perfected its own security interest by filing a UCC financing statement. In short, Falconbridge argues, the bank had no security interest when Falconbridge acquired its own security interest.

Ordinarily, only a party (actual or alleged) to a contract can challenge its validity, e.g., Williams v. Eggleston, 170 U.S. 304, 309 (1898); IDS Life Insurance Co. v. SunAmerica, Inc., 103 F.3d 524, 529 (7th Cir. 1996); OPE Shipping Ltd. v. Allstate Ins. Co., 687 F.2d 639, 643 (2d Cir. 1982); Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V., 749 F. Supp. 1243, 1250 (S.D.N.Y. 1990), and neither party to the security agreement that is at issue in this case--neither Bank One nor Vic--challenges the validity of the agreement. Of course there are illegal contracts that the government, or persons injured by the contract, can challenge, such as a contract in restraint of trade, but there is no suggestion of that here. Obviously the fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract. A contract that while not unenforceable by either party, or within the class of contracts deemed illegal, might, intentionally or negligently, deceive a third party, who in that event might have a tort remedy. But there is no suggestion that the defect in the bank's security agreement with Vic--the absence of the bank's signature--harmed Falconbridge. So far as appears, Falconbridge was unaware of the defect or of anything else about the agreement. It knew, or at least thought, there was an agreement, because before extending credit to Vic it checked the UCC registry and read the bank's financing statement, which notified Falconbridge that the bank had a security interest, implying, as we said, that it had a security agreement with Vic. Falconbridge even wrote Bank One that it was planning to obtain a purchase money security interest in the nickel it was selling Vic and in any proceeds of resales of the nickel. The bank cannot be accused of having misled Falconbridge. National Bank v. Haupricht Bros., Inc., 564 N.E.2d 101, 114 (Ohio App. 1988) (per curiam); cf. Elhard v. Prairie Distributors, Inc., 366 N.W.2d 465, 468 (N.D. 1985).

So Falconbridge cannot appeal to any general legal or equitable principle that might enable it to challenge the validity of the bank's agreement with Vic. But we must consider the bearing of UCC

sec. 9-203(1)(a), which provides that a security interest is not "enforceable against the debtor or third parties with respect to the collateral" unless (the collateral not being in the creditor's possession or control) "the debtor has signed a security agreement which contains a description of the collateral." Some courts have permitted a subsequent creditor to use this provision to knock out the priority of an earlier creditor without requiring proof that he was actually misled or otherwise prejudiced by any defect in the security agreement. World Wide Tracers, Inc. v. Metropolitan Protection, Inc., 384 N.W.2d 442 (Minn. 1986); In re Middle Atlantic Stud Welding Co., 503 F.2d 1133, 1136 (3d Cir. 1974). This result, which is contrary to the Haupricht case cited earlier, strikes us as questionable despite its conformity to the literal language of section 9-203; it gives the later creditor a windfall by enabling him to knock out a priority on the basis of a defect on which he did not rely. No matter. The debtor signed the security agreement in this case and the agreement describes the collateral. The fact that section 9-203 requires the debtor to sign and does not mention signature by the creditor helps to show that the draftsmen did not think that a priority should be lost merely because the creditor's signature was missing.

A complicating factor in some cases, though not in this one, is that a trustee in bankruptcy (or debtor in possession) has the status of a hypothetical lien creditor "without regard to any knowledge of the trustee or of any creditor," 11 U.S.C. sec. 544(a), entitling him to void a security interest because of defects that need not have misled, or even have been capable of misleading, anyone. Pearson v. Salina Coffee House, Inc., 831 F.2d 1531 (10th Cir. 1987); In re Sandy Ridge Oil Co., 807 F.2d 1332 (7th Cir. 1986); Sommers v. International Business Machines, 640 F.2d 686, 688-89 (5th Cir. 1981). The trustee did not assert this right here, probably because the only benefit would have been to another secured creditor, Falconbridge, and the trustee's duty is to maximize the recovery of the unsecured creditors.

For completeness we further note that while the provision requiring an adequate description of the collateral is intended in part for the protection of subsequent creditors, In re Martin Grinding & Machine Works, Inc., 793 F.2d 592, 596-97 (7th Cir. 1986); In re Laminated Veneers Co., 471 F.2d 1124, 1125 (2d Cir. 1973), and so may be enforced by them, at least when they can show they were misled by an inadequate description, the provision requiring the debtor's signature is not intended for their protection.

It is a statute of frauds provision intended to make it easier for courts to resolve disputes over the meaning of the agreement. 2 James J. White & Robert S. Summers, Uniform Commercial Code sec. 24-4 at 305 (1988). Falconbridge had no standing to enforce it. See UCC sec. 2-201, official comment 4; cf. BDS, Inc. v. Gillis, 477 A.2d 1121, 1123 (D.C. App. 1984) (per curiam); 2 E. Allan Farnsworth, Farnsworth on Contracts sec. 6.10, p. 168 (1990).

The real significance of section 9-203 in this case is in helping to explain section 9-201. In providing that a security agreement is effective only according to its terms, the draftsmen meant to state the general rule to which section 9-203 creates an exception. See UCC sec. 9-201, official comment. An agreement that violates section 9-203 may not be effective according to its terms. But that is not the only function of section 9-201. For the fact that Falconbridge is not permitted to question that the bank had a security interest does not automatically extinguish Falconbridge's security interest. That depends on the relative priority of the contestants' security interests, and this is where section 9-201 could bite in this case: the bank can enforce a security agreement against a subsequent creditor of its debtor, that is, can retain its priority, only insofar as the agreement gives it a security interest. Had the agreement granted the bank a security interest only in inventory by expressly disclaiming any grant of a security interest in proceeds as well, the bank could not claim the proceeds in derogation of Falconbridge's later-perfected security interest in them. But there is nothing like that here. There is no discrepancy between the bank's financing statement and its security interest. Both cover all the assets of Vic, leaving nothing for Falconbridge until the bank's claim has been satisfied.

Although unnecessary to add, the security agreement was valid; that is, Vic would have had no defense against enforcement of the agreement by the bank, or vice versa. For one thing, it is apparent from the wording of the signature requirement and the fact that the bank was authorized to fill in any blank in the agreement that the requirement was intended solely for the bank's protection, and was not intended to confer any right on Vic; it was a defect of which no one could complain. For another thing (but it is actually closely related), after the agreement was not signed the bank lent money to Vic against its inventory nonetheless, and the parties assumed that this credit was pursuant to the terms of the security agreement. Acceptance can be effectuated by performance as well as by a

signature. Restatement (Second) of Contracts sec. 30(2) (1981); 1 Farnsworth, supra, sec. 3.12, p. 222; see also UCC sec. 2-206(1)(a); 1 White & Summers, supra, sec. 1-5, p. 55. And while parties can specify that performance shall not be effective as acceptance, Golden Dipt Co. v. Systems Engineering & Mfg. Co., 465 F.2d 215 (7th Cir. 1972); In re Newport Plaza Associates, L.P., 985 F.2d 640, 645 (1st Cir. 1993); Restatement, supra, sec. 30, comment a, this would be an implausible interpretation of the acceptance clause that we quoted earlier. It would amount to saying that if the parties had been asked, "if the bank fails to sign the agreement, will the agreement be void even if the parties behave in a way that shows they thought it was in effect?" they would have said "yes." Or that if they had been asked, "does the bank's failure to sign mean that the debtor could repudiate the agreement at any time?" they would have said "no." What they really would have said would have been, "don't be silly; it was just an oversight, of no significance--and anyway the requirement of the bank's signature was for the protection of the bank, not of the debtor."

 Falconbridge's argument that the bank's effort to show acceptance by performance violates the parol evidence rule (which both parties call the "parole evidence" rule) is frivolous. The rule bars evidence oral or written concerning negotiations leading up to an integrated contract, not evidence of events subsequent to the writing that is claimed to be the statement of the parties' contract. Fischer v. First Chicago Capital Markets, 195 F.3d 279, 282 (7th Cir. 1999); Williams v. Jader Fuel Co., 944 F.2d 1388, 1394 (7th Cir. 1991); 2 Farnsworth, supra, sec. 7.6 p. 228. Anyway, to repeat a theme of this opinion, the parol evidence rule, like other contract defenses, is intended for the protection of parties or alleged parties to contracts; it is not intended to enable a stranger to break up a contractual relation. Northern Assurance Co. v. Chicago Mutual Building Ass'n, 64 N.E. 979 (Ill. 1902); Quality Lighting, Inc. v. Benjamin, 592 N.E.2d 377, 382 (Ill. App. 1992); Rittenhouse v. Tabor Grain Co., 561 N.E.2d 264, 271 (Ill. App. 1990). So there was acceptance; but if there hadn't been, yet the parties agreed they had a contract, that would be enough to defeat Falconbridge's effort to invalidate a contract on which (or on the defect in which) it did not rely in extending credit to Vic.

Affirmed.

Williams, Circuit Judge, concurring. I agree with my colleagues that Falconbridge cannot challenge the validity of the security agreement between Bank One and Vic Supply. I write separately to voice my concern regarding the majority's further determination that the security agreement is, in any event, valid. While I am sympathetic to the majority's intuition that Bank One and Vic Supply could not have intended the signature provision to mean what it says, I am not persuaded that such an intuition justifies reading the provision out of the agreement.

Under the signature provision, the security agreement becomes effective only if and when Bank One accepts the agreement by filling in the signature blank; something Bank One did not do. The signature provision is not at all ambiguous, nor is there any reason to believe it is merely surplusage. It is a cardinal principal of contract law that since the language of a contract is the best evidence of the parties' intent, every provision of a contract should be given content and effect, and unambiguous contractual language should be given its plain and natural meaning. See, e.g., Emergency Med. Care, Inc. v. Merion Mem'l Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996) (applying Illinois law); River Forest State Bank & Trust Co. v. Rosemary Joyce Enters. Inc., 689 N.E.2d 163, 167 (Ill. App. Ct. 1998). It does not matter that in hindsight one or both parties (or a court) might have second thoughts about the wisdom of including a particular term. Our task is to enforce the terms the parties included in their contract.

To my mind, moreover, it is telling that the majority cites not a single case adopting the same pragmatic approach it employs in interpreting the signature provision of the security agreement. No rule of law of which I am aware allows us to disregard the unambiguous terms of a contract in favor of what we believe the parties must have intended. Again, our task is to enforce the terms the parties included in their contract. Accordingly, I cannot join in the majority's conclusion that the security agreement between Bank One and Vic Supply is valid.