BAKODY HOMES AND DEVELOPMENT, INC., A NEBRASKA
CORPORATION, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL
CORPORATION, ET AL., APPELLEES.
516 N.W.2d 244

Filed May 27, 1994.    No. S-92-418.

John M. DiMari and Duane M. Katz for appellant.

Herbert M. Fitle, Omaha City Attorney, and Charles K.
Bunger for appellees City of Omaha, Joseph Rogers, and
Martin Shukert.

Don Stenberg, Attorney General, Charles E. Lowe, and Gary R. Welch for appellee State of Nebraska.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

Bakody Homes and Development, Inc. (Bakody), sued the City of Omaha (City) and the State of Nebraska (State), alleging that each governmental unit had negligently failed to inform Bakody of the existence of a state corridor protection plan on property Bakody was developing as a townhome subdivision.

Following a bench trial, the district court for Douglas County entered a directed verdict in favor of both the City and the State. We affirm.

## FACTS

In early 1982, the State's Department of Roads (Department) established corridor protection from 120th Street to west of 156th Street along West Dodge Road in Omaha. A corridor map, showing a corridor extending 300 feet either side of the centerline of West Dodge Road, was prepared by the Department and transmitted to city officials and the Douglas County clerk's office on April 28, 1982.

On December 15, 1982, Bakody entered into a purchase agreement for approximately 6 acres of land south of West Dodge Road at 153d Street, upon which Bakody planned to build 28 duplex townhomes on 2 culs-de-sac. The subdivision, known as Oakmount Townhomes, provided for a homeowner association and areas of common ground.

Frank Bakody, a homebuilder and president of Bakody Homes and Development, Inc., checked with the City's planning department in late 1982 or early 1983 regarding the feasibility of rezoning the property to permit the building of townhomes. He also consulted William Dorner, a licensed land surveyor and a principal of Thompson, Dreessen & Dorner, a land surveying and engineering company. Dorner was hired to (1) develop a preliminary plat of the subject property, (2) develop an estimated cost of improvements to the land, and (3)

assist in having the property rezoned.

On February 9, 1983, Bakody filed a preliminary application for subdivision plat with the City requesting the City's approval. On February 17, the City's development review committee suggested that Bakody check with the Department about the widening of West Dodge Road. Dorner, on behalf of Bakody, called the Department to determine whether additional right-of-way would be required by the State. The Department sent Dorner three drawings of the State's right-of-way plans for West Dodge Road in the area of the proposed subdivision as well as an aerial photograph of the area. Nothing on the drawings indicated a corridor plan.

Upon a second call to the Department, made because Dorner believed that the maps indicated a possible increase in the State's right-of-way in the area, Dorner was advised that although the State might need some of the platted common area for a grading easement, there would be no permanent taking of property. Dorner testified that he did not ask about a corridor plan and had no actual knowledge of the existence of a corridor plan at the time of the conversations with the Department.

On May 17, Bakody's final application for subdivision plat was approved by the City's development review committee. On August 30, 1983, Bakody purchased the subject property for $227,383. Subsequently, Bakody applied for, and was issued, several building permits by the City's permits and inspection division. Two townhomes were completed and sold, and townhome construction had started on four other lots when the City issued a work stoppage order on December 14, 1984, because the subdivision was located in the State's corridor plan. The stoppage order of that date included Lots 2 through 6 and 9 through 13. The order did not include Lots 1, 7, 8, and 14.

On March 22, 1985, the State advised Bakody that it was releasing Lots 2, 6, 9, 10, and 13 from the stoppage order. Frank Bakody testified at trial that he received a copy of a letter from the State to the City dated November 14, 1985, advising that Lots 3, 4, 5, 11, and 12 were released for construction.

Frank Bakody testified that, by the time all lots were released for construction, he considered the project to be "tainted" and unsalvageable because of the period of uncertainty and that he

had already begun negotiations for sale of the property to a neighboring church. On February 6, 1986, Bakody sold the improved property, minus Lot 5, to the church for $462,416.

Bakody then sued the City, pursuant to the Political Subdivisions Tort Claims Act, and the Department, pursuant to the State Tort Claims Act. Bakody also named Joseph Rogers (director of city permits and inspection) and Martin Shukert (director of the City's planning department) as additional defendants.

Bakody alleged that the City, Rogers, and Shukert were negligent in (1) approving the plat when they knew of the corridor plan; (2) issuing a building permit even though Rogers had received a copy of the corridor map; (3) failing to give the Department notice of Bakody's filing a request for a building permit, in violation of Neb. Rev. Stat. § 39-1311.01 (Reissue 1988); (4) failing to reasonably perform ministerial duties in refusing to issue the building permit to Bakody pursuant to the City's master plan; and (5) failing to properly maintain the master plan as required by the Omaha city code.

Bakody alleged that the State was negligent in failing to notify and accurately advise Bakody of the corridor, in providing Bakody with an incorrect map which did not reflect the proposed corridor, and in failing to ensure that no building permits were issued for construction in the corridor area.

In its directed verdict order entered at the conclusion of all the evidence, the court held (1) that the State had violated no duty to Bakody, (2) that the City had breached its duty to Bakody by failing to give the Department notice of the filing of Bakody's applications for building permits as required by Neb. Rev. Stat. § 39-1311.03 (Reissue 1989), (3) that there had been no "taking" of Bakody's land, (4) that Bakody had not presented a correct measure of damages, and (5) that evidence of Bakody's damages was speculative.

The court found that it had erred in overruling each defendant's motion for directed verdict at the close of all the evidence and entered an order sustaining those motions. Rogers and Shukert had been dismissed from the case as defendants in their individual capacities upon motion of the City at the close of Bakody's case in chief. Bakody timely appealed to the

Nebraska Court of Appeals, and under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter to this court.

## ASSIGNMENTS OF ERROR

In its appeal, Bakody claims that the district court erred in finding and holding that (1) the State violated no duty to the plaintiff, (2) the actions of the City and the State were not a taking in the sense contemplated by the Constitution of Nebraska, (3) Bakody had not presented evidence on the proper measure of damages, (4) Bakody's damage evidence was speculative and conjectural, and (5) each defendant's motion for a directed verdict should be sustained.

Because our determinations of some of the issues raised by Bakody are dispositive of this appeal, it is not necessary to discuss the remaining issues raised by Bakody's assignments of error.

## STANDARD OF REVIEW

In order to sustain a motion for directed verdict, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994). The party against whom the motion was granted is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence; if there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Marple v. Sears, Roebuck & Co.*, 244 Neb. 274, 505 N.W.2d 715 (1993).

## ANALYSIS

### STATE'S DUTY TO BAKODY

First we turn to the issue of whether the State violated any duty to Bakody. In its brief, Bakody argues that the State violated its duty to the appellant in two ways: (1) by failing to maintain the maps required by Neb. Rev. Stat. § 39-1311(1) (Reissue 1988) and (2) by furnishing an inaccurate map to Bakody's representative, Dorner.

Bakody's first argument is confusing at best because it is inconsistent with its pleadings in its amended petition and because it appears to be based upon a misunderstanding of § 39-1311(1).

In its amended petition, Bakody alleged that

the Defendant State and its agencies, *had a statutory duty to establish and maintain an accurate corridor map* and that the State and its agencies *were negligent in failing to notify and accurately advise [Bakody] and its representatives of the corridor and in providing [Bakody] with an incorrect map which did not reflect the proposed corridor*, and [in failing] to insure that no building permits were issued for construction in the corridor area.

(Emphasis supplied.) Although Bakody alleged in its amended pleading that the State had a *duty* to maintain an accurate corridor map, Bakody neither pled nor proved that the State *breached* its duty to maintain such a map.

Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet. *Diefenbaugh v. Rachow*, 244 Neb. 631, 508 N.W.2d 575 (1993). See, also, Neb. Rev. Stat. § 25-1101 et seq. (Reissue 1989). An issue not presented to or passed upon by the trial court is not an appropriate issue for consideration upon appeal. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994); *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993). Thus, the issue of whether the State failed to maintain the corridor map that Bakody claims it was required to maintain is not properly before this court.

Next we examine Bakody's argument that the State was negligent because the Department furnished "inaccurate" maps to Dorner. Bakody contends that, by virtue of Dorner's inquiry about State right-of-way plans, the Department was on notice that Bakody contemplated building within the corridor and that the State was negligent for failing to advise Dorner of the existence of the corridor. The State counters that it had no duty to furnish corridor plans to Bakody, because neither Bakody nor its representative, Dorner, ever requested information about the West Dodge Road corridor plan.

The statutory corridor protection plan as it existed at all

times material to this case became effective July 12, 1974. 1974 Neb. Laws, L.B. 805. It is axiomatic, and this court has held, that everyone is presumed to know the law. See, e.g., *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *Lindgren v. School Dist. of Bridgeport*, 170 Neb. 279, 102 N.W.2d 599 (1960); *Beltner v. Carlson*, 153 Neb. 797, 46 N.W.2d 153 (1951).

Bakody's representative, Dorner, a licensed surveyor retained by Bakody to assist in the platting and zoning of the Oakmount Townhome subdivision, testified that he did not know if he was aware of Nebraska's corridor protection law at that time and that he was unaware of the corridor protection plan for West Dodge Road until sometime after this incident occurred. Dorner admitted that, although he made two separate inquiries of the Department, both of those inquiries requested information about the State's need for additional *right-of-way* which would affect the plat of the subdivision. He testified that he is sure he did not ask anyone at the Department about the *corridor protection plan*.

We are unaware of any authority, nor have we been cited to any, which would hold the State liable for the Department's failing to provide *corridor maps* to Dorner when he specifically inquired about *right-of-way plans* for West Dodge Road. One cannot be negligent in failing to perform an act which one did not in the first instance have a duty or obligation to perform. *Travelers Indemnity Co. v. Center Bank*, 202 Neb. 294, 275 N.W.2d 73 (1979).

It is uncontroverted that the Department furnished Dorner with the exact information he requested on behalf of Bakody, that is, the right-of-way plans for West Dodge Road. It defies logic to impose a duty on the Department to somehow read the minds of its callers and furnish them with information accordingly.

Bakody and its agent, Dorner, are charged with knowledge of the corridor law, and Dorner's admitted unfamiliarity with the law may not be made the basis for imposing liability upon the State. The record fails to reveal any evidence whatever that the Department breached any duty in providing information that Dorner in fact requested. Thus it was not error for the trial court to hold as a matter of law that the State had not breached

any duty to Bakody and to enter a directed verdict in favor of the State.

### DAMAGES

We now turn to the issue of whether the trial court erred in holding that Bakody's damages were speculative and conjectural.

Richard See, a licensed real estate appraiser called to testify by Bakody, provided expert testimony as to the alleged damages sustained by Bakody. A review of the record shows that the only actual costs used by See in his calculation of Bakody's damages were Bakody's cost to acquire the unimproved 6-acre tract of land, upon which Bakody planned to develop the Oakmount Townhome subdivision, and the sale price of the same tract of land, which at the time of sale to a neighboring church included improvements but did not include Lot 5.

See estimated most of the other costs and expenses related to the project by using the Marshall Valuation Service. See made his own estimate of $12,000 for legal expenses in connection with the project. Profit on the project was projected to be 16 percent, discounted to 12 percent to reflect a 3$^1/2$-year sell-out period, for an estimated profit of $178,140.

On cross-examination, See explained that he took his cost estimates from the Marshall Valuation Service rather than getting costs from Bakody because he was trying to look at the property as a buyer would look at it. He stated that his opinion was based on the market data he could find and that "Bakodys' actual building expenses were another question. I don't know . . . what they were in total. I never saw complete documents on any of that." See further testified:

> I saw some numbers that [plaintiff's attorney] had provided to me from his file; but . . . it was my determination that you couldn't identify specifically what items went to what costs. It appeared as though other projects had been combined into the accounting. Sometimes invoices would be for one address at Oakmont [sic] and include an address someplace else that he was bidding, and without being an accountant, I couldn't do an audit or wasn't going to do an audit of his accounting statements.

Frank Bakody testified that "some" of the documents in which he kept track of the subdivision costs had been lost and that he was unable to produce the documents at the time of trial. Barbara Bakody, Frank's wife and the only other shareholder of the Bakody corporation, testified that she was in charge of most of the financial records for the corporation. She further testified that "some" of the financial records for the project were lost or misplaced during several moves subsequent to the sale of the Oakmount Townhome property, although she stated that she had "some" of them.

As an element of a negligence cause of action, a plaintiff must prove damages with reasonable certainty. *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991). The nature and amount of damages cannot be sustained by evidence which is speculative and conjectural. *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989).

As a matter of law, in the absence of evidence as to the actual costs of the Oakmount Townhome project, See's estimated costs of the project as well as an estimated profit margin resulted in a damage estimate that was speculative and conjectural.

It is evident, based upon See's testimony, that some of the cost records for the project were in the possession of Bakody's attorney. The record fails to reflect that any attempt was made to separate the costs of the Oakmount Townhome subdivision from the costs of Bakody's other building projects for the purpose of the present litigation.

Moreover, it could be inferred from the record that at least some of the actual cost records, such as for engineering and legal services, could have been obtained from the firms who did the work. As previously noted, Dorner, a member of the engineering firm which did the preliminary cost estimates of improvements to the subject property, testified for Bakody at trial. The Thompson firm's preliminary estimate of costs for constructing the improvements was entered into evidence. However, Dorner did not testify as to the actual engineering costs of the project, nor could he recall whether the actual costs of the project were consistent with the projected costs.

We note further that Thompson's preliminary estimate,

*which included an estimate of its own engineering fees,*
projected the total costs of improvements to the property to be
$96,685. See, using the Marshall Valuation Service figures,
arrived at an estimated cost of $168,010 for improvements and
$13,642 for engineering, for a total of $181,652, or nearly *twice*
Thompson's preliminary cost estimate.

Thompson, in the same estimate, advised Bakody that
"[t]ypically a subdivision can be graded for $350 to $400 per
lot." Using the $400 per lot figure, the projected cost for
grading 14 lots would have been $5,600. See, on the other hand,
estimated the grading costs of the subdivision to be $33,977,
again using the Marshall Valuation Service. This is more than
*six times* the cost projected by Thompson.

Assuming but not deciding that the trial court correctly
determined that the City breached its duty to Bakody and that
the breach was the proximate cause of Bakody initiating
construction on the project, the record is more than adequate to
support the trial court's conclusion that reasonable minds could
not differ that Bakody's evidence of its damages was based on
speculation and conjecture and that Bakody had failed to
adduce evidence of any damages with reasonable certainty.
Therefore, the City was entitled to a directed verdict as a matter
of law. Bakody's assignment of error to the contrary is without
merit.

We further note that, although we do not find it necessary to
analyze Bakody's other assignments of error, reasonable minds
likewise could not differ that Bakody failed to adduce evidence
of its damages with reasonable certainty as to the State, either
on a negligence theory or a taking theory. Thus, Bakody's
evidence of damages, as a matter of law, is also too speculative
and conjectural to support an award of damages from the
State.

## CONCLUSION

Having fully considered Bakody's other assignments of
error, and having found the above issues dispositive of the case,
we affirm the trial court's entering of directed verdicts in favor
of both the City and the State.

AFFIRMED.