17 Neb. App. 715
THIRTY LLC ET AL., APPELLANTS,
v.
OMAHA HOUSING AUTHORITY, APPELLEE.
No. A-08-1201.
Court of Appeals of Nebraska.
Filed June 23, 2009.
Douglas W. Ruge for appellants.
George B. Achola for appellee.
IRWIN, CARLSON, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Thirty LLC; GNO Properties LLC; JRG LLC; Theiss LLC; Marion General Partnership; First Real Estate Group, Inc. (FREG); and Ruben Cortez (collectively the Appellants) appeal from the decision of the district court for Douglas County in this declaratory judgment action brought by the Appellants against the Omaha Housing Authority (OHA). Because we find no error in the district court's interpretation of the contract at issue in this appeal, we affirm.

BACKGROUND
The OHA is a public housing agency (PHA) established pursuant to state and federal housing programs. The OHA operates two major housing programs: a public housing program and a housing choice voucher program commonly referred to as the "Section 8" program. The OHA's Section 8 program is the center of the dispute in this lawsuit.
The Section 8 housing choice voucher program is a federal program created by the U.S. Department of Housing and Urban Development. One goal of the program is to provide low-income families with rent subsidies that can be applied to a home of their choice in the private sector. The money for the housing choice vouchers is allocated by the U.S. Department of Housing and Urban Development to local PHA's, such as the OHA, which administer the program in their respective areas. Under the Section 8 housing choice voucher program, an individual applies to a PHA, such as the OHA, for Section 8 benefits. A family that qualifies for the Section 8 program is issued a housing voucher and is responsible for finding a suitable housing unit of the family's choice, which the owner agrees to rent under the program. Once a PHA approves an eligible family's housing unit, the family and the landlord sign a lease and, at the same time, the landlord and the PHA sign a "Housing Assistance Payments" contract (HAP contract) that runs for the same term as the lease. Owner participation in the Section 8 program in Nebraska is voluntary.
Thirty, GNO Properties, JRG, Theiss, Marion General Partnership, and FREG are Nebraska companies and are landlord participants in the Section 8 program administered by the OHA. Each of the appellants other than FREG has a separate HAP contract with the OHA. Robert Stevens is a minority owner of Thirty and the president and sole owner of FREG. FREG manages real estate rental units for various owners, including those of Thirty and the other appellants in this action.
Tammy Ray was an individual receiving Section 8 assistance from the OHA. On January 31, 2005, Ray entered into a lease agreement for the property in question for the monthly rental amount of $497. Around the same time, Thirty and Ray entered into a separate agreement, outside of the HAP contract and unbeknownst to the OHA, providing that Ray would pay $103 a month above the agreed-upon HAP contract amount from the initial term of the HAP contract until September 2005. Ray paid the additional $103 monthly amount from the initial term of the HAP contract until September 2005. On February 14, 2005, the OHA entered into an HAP contract with Thirty to assist Ray with her rent for the property. The monthly rent to the owner was established at $497. The HAP contract provides that the owner "may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to rent to owner." The HAP contract also provides that the tenant is not responsible for paying the portion of rent to the owner covered by the PHA housing assistance payment, that a PHA failure to pay the housing assistance payment is not a violation of the lease, and that the owner may not terminate the tenancy for nonpayment of the housing assistance payment. On January 31, 2005, Stevens, acting as "landlord/agent" for the property in question, signed a Section 8 landlord certification, which is required by the OHA. Within that document, Stevens agreed, "I understand . . . that it is illegal to charge any additional amounts for rent which have not been specifically approved by the [OHA]."
In April 2006, Thirty brought an eviction action against Ray in the county court for Douglas County after she fell behind in the $103 payments due under the outside agreement. This eviction action led to further litigation initiated by Ray and brought the outside agreement to the attention of the OHA. In subsequent hearings in the county court action, Ray and Thirty agreed that Ray would voluntarily move out of the property in question. When Ray still had not moved out, despite the stipulated agreement, the county court judge ordered a writ of restitution, granting restitution of the premises to Thirty.
In an action in the district court, brought while the county court case was still pending, Ray sued Thirty and FREG for, among other things, return of the monthly payments of $103 made over the amount stated in the HAP contract. In the district court case, the court determined that Thirty had breached the HAP contract by accepting payment for rent above what was agreed upon in the lease. In a memorandum opinion filed on June 23, 2009, in case No. A-08-1020, we decided the district court case.
After learning that Thirty was charging Ray rent above and beyond the contracted-for amount of $497 per month, the OHA began an investigation of Thirty. As a result of the investigation, the OHA determined that Thirty had breached the HAP contract for the property leased to Ray by charging Ray additional moneys beyond the contracted-for rent and by filing an eviction action against Ray.
In September 2006, the OHA informed Thirty that it had determined that Thirty had breached the HAP contract, that Thirty was not entitled to payments it received during the time in question (totaling $9,261), and that if Thirty did not remit this amount, the OHA would begin recoupment from other properties Thirty had in the Section 8 program. In November, the OHA recouped or deducted the $9,261 from two main sources. First, it recouped or deducted $1,801 from contracts on which Thirty was the owner. Second, the OHA recouped or deducted $7,460 from contracts on which FREG was the managing agent. This second group included contracts on which GNO Properties, JRG, Theiss, Marion General Partnership, and Cortez were listed as owners.
The Appellants filed the present declaratory judgment action in the district court on February 22, 2007. The Appellants asked the court to determine whether, under the terms of the HAP contract, the OHA has the right to retroactively deduct agreed payments made while a tenant occupies the property even when any overage payments were refunded to the tenant. The Appellants sought $7,883 in damages and attached an exhibit showing the amounts recouped by the OHA from each owner, which amounts totaled $7,883.
The OHA answered, admitting and denying various allegations of the complaint. Specifically, the OHA alleged that on January 12, 2006, it notified Thirty by letter that Thirty could not collect payments in excess of the amount specified in the Ray HAP contract and that the OHA had the option to recoup all HAP contract payments for violations of the HAP contract. The OHA denied that it took the position that it could deduct payments from other landlords whose property was managed by FREG but asserted that it had the right to deduct payments from contracts held between the OHA and "any company or person that appears to maintain or have an ownership interest in Thirty . . . as set forth in paragraph 7(f) of the HAP contract."
The Appellants filed a motion for summary judgment or partial summary judgment on April 23, 2007. The Appellants asked the district court for summary judgment "for amounts withheld for their benefit from [the OHA] at [the OHA's] cost, or, in the alternative, for partial summary judgment determining which [of the Appellants] are entitled to a refund of HAP [contract] payments withheld, if any."
The district court entered an order on July 31, 2007, overruling the summary judgment motion. The court found no dispute that Thirty overcharged Ray in the amount of $103 per month, but it concluded that there was a genuine issue of material fact concerning the rights and liabilities of the parties under the HAP contract.
Trial was held before the district court on July 16, 2008. The court received the parties' stipulations as to the facts, which we have summarized above. Exhibits referenced in and attached to the parties' stipulation include a copy of the HAP contract benefiting Ray, the Section 8 landlord certification signed by Stevens, the lease agreement between JRG and Ray, and a document setting forth a breakdown of amounts recouped by the OHA from FREG contracts ($7,460) and a breakdown of amounts recouped from Thirty contracts ($1,801).
The district court entered an order on October 17, 2008, concluding that the OHA was entitled to offset $9,261 paid to Thirty "during which time Thirty was not in compliance with [the] OHA with regard to the lease agreement with . . . Ray," and that the oHA was entitled to offset amounts owed to thirty under other contracts for payment of the $9,261, but that the OHA could not offset any amounts owed to Thirty's coappellants and that such amounts must be refunded to the coappellants. We have set forth the specific details of the court's reasoning in the analysis section below.

ASSIGNMENT OF ERROR
The Appellants assert, consolidated and restated, that the district court erred in its interpretation of the HAP contract.

STANDARD OF REVIEW
[1-4] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006). When a dispute sounds in contract, the action is to be treated as one at law. Spanish Oaks v. Hy-Vee, 265 Neb. 133, 655 N.W.2d 390 (2003). In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court. State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 268 Neb. 439, 684 N.W.2d 14 (2004). Determinations of factual issues in a declaratory judgment action treated as an action at law will not be disturbed on appeal unless they are clearly wrong. Id.

ANALYSIS

Relevant Provisions of HAP Contract.
We first set forth the provisions of the HAP contract relevant to our analysis. Part B, paragraph 4b(8), provides: "The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the [housing quality survey], or determines that the owner has otherwise breached the HAP contract."
Part B, paragraph 7b, provides: "Owner compliance with HAP contract. Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."
Part B, paragraph 7f, provides:
Overpayment to owner. If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).
Part B, paragraph 10a, provides, in part:
Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:
(1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the [housing quality survey].
(2) If the owner has violated any obligation under any other [HAP] contract under Section 8.
Part B, paragraph 10c, provides: "The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract."
Part C, paragraph 5, concerns payments to the owner by the family receiving housing assistance and provides:
d. The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.
e. The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.
f. The owner must immediately return any excess payment to the tenant.

Meaning of "Overpayments."
The question presented for our consideration is whether the district court properly construed the meaning of the term "overpayments" in the HAP contract.
The district court summarized the OHA's argument as follows: "If Thirty is in breach of the [HAP contract, the] OHA may terminate the [HAP contract], and in the case of a breach, Thirty is not entitled to housing payments it received." The court noted that the OHA relied primarily on part B, paragraphs 7f, 10a, and, in particular, 10c, which the OHA interpreted to mean that if there is a breach, the owner, Thirty, was not entitled to any of the payments it received, such payments then being considered "overpayments" that the OHA could recoup by deducting amounts not due to the OHA from any other payment the OHA might owe the owner.
The district court stated Thirty's argument to be that the term "overpayment" means only the amount which the owner "overcharged" the tenant, i.e., the monthly charge to Ray of $103, and not all amounts paid to Thirty under the HAP contract. Thirty also argued that the OHA was not damaged, because Ray received the benefit of the housing for the amount approved by Thirty and the OHA. The court observed that Thirty's argument was based on the legal theory of damages, that is, the OHA is only entitled to be placed in the same position it would have occupied. See Aon Consulting v. Midlands Fin. Benefits, 275 Neb. 642, 748 N.W.2d 626 (2008) (in breach of contract case, ultimate objective of damages award is to put injured party in same position injured party would have occupied if contract had been performed, that is, to make injured party whole).
[5] In finding Thirty's arguments to be without merit, the district court relied on Kozlik v. Emelco, Inc., 240 Neb. 525, 483 N.W.2d 114 (1992). Kozlik was a declaratory judgment action to determine the rights of the parties under an employment contract. The contract in question contained a provision that in the event the employee was terminated from his employment without cause, the employer would pay the employee his regular salary until the expiration of the term of employment specified in the contract. Following a jury trial, the jury determined that the employer had discharged the employee without cause and the trial judge assessed the employee's damages. On appeal, the employer urged that language in the contract concerning termination without cause was inapplicable and, if applicable, imposed an unenforceable penalty. The Nebraska Supreme Court observed that parties to a contract may override the application of the judicial remedy for breach of a contract by stipulating, in advance, to a reasonable sum to be paid in the event of a breach. Id.
In the present case, the district court concluded that Thirty's failure to provide the rental unit to Ray at the agreed-upon rate constituted a material, not minor, breach of the HAP contract. The court stated that the very thing bargained for in the HAP contract was that the OHA would pay Ray's rent and that Thirty would charge Ray only that amount for the rental unit. The court found that the intent of the HAP contract was to provide suitable housing for tenants in the OHA's program at a certain rental rate set out in the HAP contract. The court reasoned that the remedies provided in the HAP contract were designed to ensure that the OHA's assistance program could be administered in a way that is fair and just, allowing for a reasonable deterrent against owners who would attempt to charge tenants more than the amount contractually agreed. The court noted part C, paragraph 5f, of the HAP contract, which provides with respect to payment by the family receiving assistance to the owner of the rental unit, "The owner must immediately return any excess rent payment to the tenant." The court reasoned, in essence, that if the owner is only contractually bound to return the "excess rent" to the tenant under part B, paragraph 7f, the provision of the HAP contract which provides that the OHA may deduct the "overpayments" from amounts owed by the OHA would be meaningless.
The district court concluded that the HAP contract, when read in its entirety, means that for the owner to be eligible to receive the housing assistance payments, the owner must comply with all of the provisions of the HAP contract, including the provision requiring it not to charge additional rent to a tenant under part C, paragraph 5e. The court further concluded that if the owner is not eligible to receive the housing assistance payments, then the owner has been overpaid by the OHA, and that the OHA may, as one of several remedies, deduct the amounts of housing assistance payments that were overpaid to the owner from other amounts the OHA owes to the owner. The court determined that as used in the HAP contract, "overpayments" do not refer to the excess rent paid by a tenant to the owner, but, rather, to the amount of housing assistance payments overpaid to the owner by the OHA for the time period the owner was not in compliance with the HAP contract. The court found that the HAP contract must be interpreted to mean that "not only must the overcharged amount [of excess rent] be returned [to the tenant] but also that Thirty is not eligible for any of the assistance payments and the entire amount [of assistance payments] paid under the [HAP contract] must be returned to [the] OHA."
[6-8] We agree with the district court's reading of the HAP contract. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. Lexington Ins. Co. v. Entrex Comm. Servs., 275 Neb. 702, 749 N.W.2d 124 (2008). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Id. A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. Id. The district court's reading of the HAP contract construes it as a whole and gives effect to all of its parts. We agree that the "overpayments" referenced in part B, paragraphs 7 and 10, refer to housing assistance payments received by the owner for which the owner was not eligible, that the owner is not eligible for housing assistance payments when it is in breach of the HAP contract, and that "overpayments" in that portion of the HAP contract means something other than the "excess" payments from the tenant to the owner referenced in part C, paragraph 5. The HAP contract clearly provides that an owner is not eligible for housing assistance payments if it is in breach of the HAP contract, and the record shows that Thirty was in breach relative to the lease with Ray from the inception of the lease in that it charged her an additional $103 over and above the $497 housing assistance payment agreed to by the OHA and Thirty. Because Thirty was not eligible for the housing assistance payments by virtue of its breach, the payments made by the OHA to Thirty were "overpayments" and the entire amount of the overpayment was properly recouped by the OHA under part B, paragraph 7f, of the HAP contract. We find no error in the district court's interpretation of the term "overpayments" found in the HAP contract. Thirty's arguments to the contrary are without merit.

CONCLUSION
The district court correctly interpreted the HAP contract.
AFFIRMED.